**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 07-cv-01334-WJM-KLM

LATEESH CLAYPOOL,

    Plaintiff,

v.

STONEBRIDGE HOSPITALITY ASSOCIATES, LLC,

    Defendant.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, ECF No. 35, filed on April 5, 2011, and on Defendant's Motion Requesting Ruling on Motion for Summary Judgment ("Motion for Ruling"), ECF No. 38, filed on June 8, 2011. For the following reasons, the Motion for Summary Judgment is GRANTED.

**INTRODUCTION**

This is a job discrimination suit. Plaintiff Lateesh Claypool ("Plaintiff" or "Claypool") alleges Defendant Stonebridge Hospitality Associates, LLC ("Defendant" or "Stonebridge") discriminated against her by failing to promote her to the position of General Manager, and further alleges that Stonebridge constructively terminated her employment with Defendant by not promoting her. Claypool brings claims for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").

**BACKGROUND**

**I.     Factual Background**

The following facts established in the record, unless otherwise noted, do not appear to be in material dispute.  Claypool, an African-American woman, began working for Stonebridge on November 30, 2001 as a front desk clerk at what is now the Aurora Fairfield Inn.  (*See* Renn Aff., ECF No. 47-1 at ¶ 7.)  By 2006, Claypool had been given increased responsibilities and the title of front office manager.  (Compl., ECF No. 3 at 6.)

Throughout her tenure, Claypool repeatedly expressed interest in holding the general manager position.  On November 2, 2004, March 17, 2005, and again on November 15, 2005, Claypool submitted e-mail resumes asking to be considered for open general manager positions at Stonebridge properties.  (Compl., ECF No. 3 at 8-13.)  Claypool further sent an inquiry to Hayley Renn ("Renn"), corporate director of human resources, informing Renn of Claypool's interest in becoming a general manager and letting Renn know that Claypool was pursuing relevant education for such a position.  (*Id.* at 9.)

On June 5, 2006, Stonebridge posted an open general manager position at the Aurora Fairfield Inn on the internet at Hcareers.com.  (Archived Jobs, ECF No. 35-5.)  Applications could be submitted through Hcareers.com.  (*See* Renn Aff., ECF No. 47-1 at ¶¶ 2, 5.)  Defendant's posted announcement did not set out a deadline by which applications had to be received.  On June 8, 2006, Christian Paulsen ("Paulsen") submitted an application for the open general manager position through Hcareers.com.  (*Id.* at ¶ 5.)  Paulsen interviewed with Darren Leo ("Leo"), Vice President of Hotel

Operations, and the Senior Vice President of Hotel Operations on June 23, 2006. (*Id.* at ¶ 6.) Following formal approval by the Leo and the un-named Chief Operations Officer, Paulsen was extended an offer for this position on July 6, 2006. (*Id.*) Paulsen accepted the offer on July 10, 2006. (*Id.*)

On the same day Paulsen was extended the offer, Claypool sent an e-mail containing a cover letter and resume to Leo, requesting an opportunity to interview for the general manager position. (Claypool App., ECF No. 35-7.) On July 13, 2006, Leo responded to Claypool and informed her that the position had already been filled. (Compl., ECF No. 3 at 15.) Thereafter, Claypool quit her job before Paulsen began work at the hotel as general manager. (*See* Claypool Dep., ECF No. 35-1 at 53:14-16; 109:1:17.)

## II.   Procedural Background

Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission on August 2, 2006, and received a Notice of Right to Sue the Defendant on March 21, 2007. (Compl., ECF No. 3 at 2 ¶ 7.) On June 13, 2007, Claypool filed a motion to proceed *in forma pauperis* pursuant to 28 U.S.C. 1915, which the Court granted. (ECF Nos. 1; 2.) On June 25, 2007, Claypool filed her complaint alleging discrimination and constructive termination. (Compl., ECF No. 3.) On July 20, 2010, counsel for Claypool entered an appearance. (ECF No. 20.) On April 5, 2011, Defendant filed the instant Motion for Summary Judgment. (ECF No. 35.) On June 8, 2011, Defendant filed its Motion for Ruling following a lack of response within the appropriate time frame by Claypool to Defendant's Motion for Summary Judgement. (ECF No. 38.) The Court issued an Order to Show Cause in response to the Motion for

Ruling, ordering a response to the Motion for Summary Judgment or a response in writing demonstrating good cause for not responding to said Motion.  (ECF No. 41.)  Claypool filed a response on June 20, 2011.  (ECF Nos. 43; 45.)  The Motion for Summary Judgment is now ripe for disposition.[1]

### STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense.  *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  In contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).

The non-moving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

---

[1] Plaintiff's belated filing of her response to the Motion for Summary Judment effectively mooted the Motion for Ruling.

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## DISCUSSION

**I.     Discrimination Claims**

Claypool asserts Title VII and ADEA claims against Stonebridge for failing to promote her to the general manager position based on alleged racial and age discrimination. (Compl., ECF No. 3 at 2 ¶ 9.) Both claims are analyzed under the framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-805 (1972). *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (noting framework for analyzing Title VII claims also applies to ADEA claims). In order to prevail, Claypool must show that the discrimination complained of was intentional. *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999) (citation omitted) *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98-102 (2003). A plaintiff may prove intentional discrimination either directly or indirectly. *Id.* Evidence that is, on its face, discriminatory, is direct evidence. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Circumstantial evidence, however, requires the fact finder to infer discrimination from the facts. *Id.*

Where, as here, the plaintiff relies on circumstantial evidence to support her claims, the Supreme Court in *McDonnell Douglas* established a three-step analysis for determining whether a plaintiff's claims of discrimination can withstand summary judgment. 411 U.S. at 802-05; *see also Adamson*, 514 F.3d at 1145. This analysis first requires the plaintiff to establish a prima facie case of discrimination. *Adamson*, 514

F.3d at 1145. If a prima facie case is made, the burden then shifts to the defendant to show a "legitimate, nondiscriminatory reason for its actions." *Id.* If the defendant makes such a showing, "the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Garrett*, 305 F.3d at 1216.

Therefore, the Court first looks to whether Claypool has a prima facie case of discrimination. The *McDonnell Douglas* Court established four elements Claypool must meet:

> (I) that [s]he belongs to a racial minority; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [s]he was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802 (establishing the elements in a Title VII case); *see also Garrison v. Gambro*, 428 F.3d 933, 937 (10th Cir. 2005) (applying the *McDonnell* framework to both Title VII and ADEA claims).

The second element of the *McDonnell Douglas* prima facie showing requires Claypool to show that she applied for an available position. *See McDonnell Douglas*, 411 U.S. at 802. In order for a plaintiff to assert a failure to promote claim, she "must have applied for the position she was denied." *Stover v. Martinez*, 382 F.3d 1064, 1072 (10th Cir. 2004) (citation omitted).

With respect to whether Claypool applied for an available position, the evidence here is clear. The general manager position at issue was posted on June 5, 2006. (Archived Jobs, ECF No. 35-5.) On June 8, 2006, Paulsen applied and was interviewed

thereafter on June 23. (Renn Aff., ECF No. 47-1 at ¶ 5-6.) On July 6, 2006, thirty-one days after the position was posted on Stonebridge's Hcareers.com website, Claypool applied for the position by sending an e-mail to Leo. (Compl., ECF No. 3 at 14.) On that same date, July 6, 2006, following approval by Stonebridge executives, Stonebridge extended an offer to Paulsen for the general manager position at issue, which he accepted four days later. (Renn Aff., ECF No. 47-1 at ¶ 6.) On the date Claypool submitted her application, the general manager position had already been offered to Paulsen and, therefore, contingent on Paulsen's acceptance of this offer, was no longer available. Since Paulsen did in fact accept the offer, the position never again opened up and became available. Claypool has therefore failed to establish that she applied for a position which was open and available at the time she applied.

Accordingly, the Court finds that Claypool cannot establish a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Summary judgment on Plaintiff's Title VII and ADEA claims is therefore appropriate.

**II.     Constructive Discharge Claim**

Claypool further asserts that she was constructively discharged by Stonebridge following the hiring of Paulsen. (Compl., ECF No. 3 at 22.) The Tenth Circuit defines constructive discharge as occurring

> when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign. Essentially, a plaintiff must show that she had *no other choice* but to quit. The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant.

*Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1325 (10th Cir. 2004) (emphasis in

original) (citation omitted).

In her complaint, Claypool alleged that she was faced with a hostile work environment, which caused her to resign. (ECF No. 3 at 22.) Claypool further alleges that door locks were changed to prevent her access to an office, computer passwords were changed to prevent her access to computers, her responsibilities were stripped, and her professionalism and work ethics were being questioned on several fronts. (*Id.*; ECF No. 45 at 7.) However, apart from these bare assertions, Claypool has provided to the Court no evidence, competent or otherwise, supporting these allegations, nor has she in any other manner established that the hostile work environment to which Plaintiff was allegedly subjected was based on her race or age.

In fact, at her deposition Claypool conceded that during all the years she worked for Stonebridge she never once heard anyone say anything derogatory about her race or age. (Claypool Dep., ECF No. 35-1 at 41:15-23.) When asked if "the constructive discharge was more because you were upset that [Stonebridge] kept passing you over for the promotion, not so much about the amount of issues going on at the hotel," Claypool responded "yes." (*Id.* at 109:2-7.)

Claypool also argues that, prior to leaving Stonebridge, she had trained newly-hired general managers. (ECF No. 45 at 7.) Claypool asserts that she would have had to train Paulsen as well, and that such training contributed to the claim for constructive discharge because she felt she had been doing the work of a general manager and was not being recognized for performing those duties. (*Id.*; Claypool Dep., ECF No. 35-1 at 42:8-17.) While no doubt frustrating for Claypool, this is not a legally sufficient basis upon which to predicate a claim of constructive discharge.

Therefore, there being no evidence in the record satisfying the *Sandoval* standard for asserting a prima facie claim of constructive discharge, the Court finds that summary judgment on this claim is also appropriate.

## CONCLUSION

Accordingly, it is hereby ORDERED that:

1) Defendant's Motion for Summary Judgment, ECF No. 35, is GRANTED;

2) Defendant's Motion for Ruling, ECF No. 38, is DENIED as MOOT; and

3) Judgment shall be entered in favor of Defendant Stonebridge Hospitality Associates, LLC on all claims. Defendant shall have its costs.

Dated this 10th day of August, 2011.

BY THE COURT:

William J. Martinez
United States District Judge